IN THE UNITED STATES COURT FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **LOPEZ-SANCHEZ, KELVIN,**<br>**Petitioner,**<br><br>**vs.**<br><br>**TODD BLANCHE, in her official capacity as Attorney General of the United States; TODD LYONS, in his official capacity as Acting Director, Immigration and Customs Enforcement; ALLEN GILL, in his official capacity as Field Office Director of Omaha; ROB JEFFREYS, in his official capacity of Director of Nebraska Department of Corrections; Department of Homeland Security** | **Case No.** |

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND COMPLAINT FOR INJUNCTIVE RELIEF

COMES NOW, Kelvin Lopez-Sanchez, Petitioner in the above captioned case, by and through his attorney Paul J. Forney, and hereby petitions this Court for a writ of habeas corpus to remedy Petitioner's unlawful detention, and enjoin Petitioner's unlawful detention by the Respondent. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

## PARTIES

1.  Petitioner, Kelvin Lopez-Sanchez, is a native and citizen of Nicaragua.

2.  Respondent Todd Blanche, Attorney General of the United States. As such, Mr. Blanche is the head of the Department of Justice, which encompasses the Board of Immigration Appeals. Mr. Blanche is being sued in her official capacity.

3.  Respondent Todd Lyons is the Acting Director, Immigration and Customs Enforcement. In this capacity, Mr. Lyons has responsibility for the enforcement of immigration laws. Mr. Lyons is being sued in his official capacity.

4.  Respondent Allen Gill, Field Office Director of Omaha office of United States Immigration and Customs Enforcement. Mr. Gill is in charge overseeing and managing ICE in Nebraska. Mr. Gill is being sued in his official capacity.

5.  Respondent Rob Jeffreys, Director of Nebraska Department of Corrections. In this capacity, Mr. Jeffreys oversees the entire Nebraska corrections system. Nebraska has contracted with the Department of Homeland Security to be managed by the Nebraska Department of Correctional Services. Mr. Jeffreys being sued in his official capacity.

6.  Department of Homeland Security.

## JURISDICTION

7. This action arises under the Constitution of the United States, 28 U.S.C. § 2241(c)(1), and the Immigration and Nationality Act, as amended ("INA"), 8 U.S.C. § 1101 et seq. This Court has subject matter jurisdiction under 28 U.S.C. § 2241, Art. I § 9, cl. 2 of the United States Constitution ("Suspension Clause"), and 28 U.S.C. § 1331, as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. See *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001);  INS v. St. Cyr, 533 U.S. 289, 301 (2001)("at its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest."); *Clark v. Martinez*, 543 U.S. 371 (2005) (holding that *Zadvydas* applies to aliens found inadmissible as well as removable); *Nnadika v. U.S. Att'y Gen.*, 484 F.3d 626, 632 (3rd Cir. 2007) (holding that, post-REAL ID, challenges to detention remain within the jurisdiction of the district court).

## VENUE

8. Venue lies in the District of Nebraska because Petitioner is currently detained in the territorial jurisdiction of this Court, at the Sarpy County Jail. 28 U.S.C. § 2241 et seq. and 28 U.S.C. § 1391.

## EXHAUSTION OF REMEDIES

9.  Courts generally require "administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 496 (S.D.N.Y. 2025) (citations omitted). However, such exhaustion is not a "statutory requirement." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 496 (S.D.N.Y. 2025) (citations and quotations omitted). Courts can waive the exhaustion requirement if administrative remedies would be futile or irreparable injury will result. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025). Since the Petitioner is facing deportation, irreparable injury will result.

## STATEMENT OF FACTS

10. Petitioner is a citizen and national of Nicaragua. The Petitioner entered the United States on an unknown date, at an unknown location, without being admitted, inspected, or paroled by a Department of Homeland Security.

11. On May 6, 2026, members of Nebraska Fugitive Operations Team were conducting enforcement at the Sarpy County Courthouse in Papillion, Nebraska.

12. Omaha FOT officers advised the respondent his notice to appear was never filed and his failure to report to the immigration office in Miami, Florida, resulted in a warrant of arrest being issued. The officers took the respondent into custody without incident.

13. The Petitioner is currently incarcerated in McCook ICE detention facility in McCook, Nebraska.

14. On May 26, 2026, the Immigration Court denied the Respondent's request for a bond redetermination due to the Immigration Court not having jurisdiction under Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026) and Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025).

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

15. The issue is whether the Petitioner should be mandatorily detained under 8 U.S.C. § 1225(b)(2) or under 8 U.S.C. § 1226(a) and therefore be entitled to a bond hearing.

16. Case law and statutory construction principles show that the Petitioner is currently detained under § 1226(a).

17. The Supreme Court has held that the clear and convincing evidence standard applies to civil detention where liberty is at stake. *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1186 (D. Colo. 2024).

18. While immigration proceedings are in progress, most aliens may be released on bond or paroled. *Rodriguez v. Shanahan*, 84 F. Supp. 3d 251, 254 (S.D.N.Y. 2015) (quotations omitted). There are two statutes which principally govern the detention of non-citizens pending removal proceedings, § 1225(b)(2) and § 1226(a). *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at 11 (D. Mass. Aug. 19, 2025).

19. The distinction is whether the non-citizen is seeking admission or whether removal proceedings are taking place after already being in the United States. A "applicant(s) for admission" are those apprehended at the border or at a port of entry. *Rodriguez v. Robbins*, 715 F.3d 1127, 1132 (9th Cir. 2013). This 'applicant for admission' is seeking admission and detention is governed by § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). This type of non-citizen, who has not gained entry, has been described as being on the 'threshold of initial entry.' *Xi v. U.S. I.N.S.*, 298 F.3d 832, 838 (9th Cir. 2002). An alien on the threshold of entry "stands on a different footing" in regard to Due Process rights. *Xi v. U.S. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002) (citations omitted).

20. The seminal Supreme Court case for differentiating between § 1225(b)(2) and § 1226(a) is *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

21. In *Jennings*, the Supreme Court acknowledged and reaffirmed a basic, straightforward distinction between the two statutes. Namely, that § 1225(b)(2) applies to aliens *seeking admission* to the United States and § 1226(a) applies to aliens already in the country pending the outcome of removal proceedings (i.e., applicant for admission).

*Jennings*, 583 U.S. at 289. The law has consistently reached the sensible and obvious conclusion that these are two distinct, separate elements. *Martinez v. Hyde*, 2025 WL 2084238, at 2 (D. Mass. July 24, 2025); *Romero*, 2025 WL 2403827, at 10.

22. Indeed, § 1225(b)(2) contains different requirements than § 1226(a). For § 1225(b)(2), the statute requires both presence (applicant for admission) and present-tense action (seeking admission). See *Romero v. Hyde*, 2025 WL 2403827, at 9 (D. Mass. Aug. 19, 2025). This would mean for § 1225(b)(2) detention to apply the Petitioner, he would need to be at the 'threshold of entry' to the United States and applying for entrance. See *Xi v. U.S. I.N.S.*, 298 F.3d 832, 838 (9th Cir. 2002). When arrested, the Petitioner was in the Midwest and not near any United States border.

23. Rather, the Petitioner was already in the United States and awaiting the outcome of immigration proceedings. According to Supreme Court precedent, this implicates § 1226(a). See *Jennings*, 583 U.S. at 289.

24. The Department of Homeland Security's novel interpretation that § 1225(b)(2) would govern the Petitioner when already in the United States "is contrary to the agency's own implementing regulations, its published guidance, the decisions of its immigration judges (until very recently), decades of practice, the Supreme Court's gloss on the statutory scheme, and the overall logic of our immigration system." *Romero v. Hyde*, 795 F. Supp. 3d 271, 282 (D. Mass. 2025).

25. Furthermore, principles of statutory construction dictate that § 1226(a) has separate and distinct requirements from § 1225(b)(2).

26. A cardinal principle of statutory construction is that a statute should not be construed (if preventable) so that no clause or word will be superfluous. *Alaska Dept. of Environmental Conservation v. E.P.A.*, 540 U.S. 461, 124 S. Ct. 983, 157 L. Ed. 2d 967 (2004). Courts are hesitant to read statutes in a manner rendering parts of them superfluous or inoperative. *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 203 L. Ed. 2d 433 (2019). If two different terms are used synonymously in a statute this is superfluous language. *Born v. Allen*, 291 F.2d 345, 351 (D.C. Cir. 1960); *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1253 (11th Cir. 1999). Additionally, words in a statute should not be

construed as surplusage if a reasonable construction will provide meaning. *Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004). Similarly, courts presume differences in language convey differences in meaning. *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025).

27. The presumption against superfluity is "at its strongest" when interpreting two parts of the same statutory scheme. *Maldonado*, 795 F. Supp. 3d at 1152.

28. In the case at bar, the presumption against superfluity is at its 'strongest' because two terms within the same statute (i.e., § 1225(b)(2)) scheme are being interpreted. *Maldonado*, 795 F. Supp. 3d at 1152.

29. § 1225(b)(2) uses both 'seeking admission' and 'applicant for admission,' which connotates a different meaning. *Yao v. Almodovar*, 2025 WL 3653433, at 5 (S.D.N.Y. Dec. 17, 2025). One term requires presence (i.e., applicant for admission) and the other requires present-tense action (i.e., seeking admission). *Yao*, 2025 WL 3653433, at 5. The statute would not use two different terms to describe the same statutory requirement because this is superfluous. They each must be a separate term of art with a distinct legal definition.

30. Put differently, since 'applicant for admission' is a legal term of art, § 1225(b)(2) would not use a different term synonymously in the same sentence. Rather, § 1225(b)(2) would have either 1) used the term 'applicant for admission' again or 2) omitted the term 'seeking admission' entirely. *Yao*, 2025 WL 3653433, at 5 (surrounding language of the statute reinforces these terms are not synonymous).

31. Simply put, if the "two requirements were coterminous, that disjunctive formulation would be superfluous." *Yao*, 2025 WL 3653433, at 5. Statutorily speaking, this means that § 1225(b)(2) has different requirements and applies in a different context than § 1226(a).

32. Accordingly, the Petitioner is not an 'applicant for admission' under § 1225(b)(2) because the Petitioner was not on the threshold of entry when apprehended. Rather, the Petitioner was already in the United States while his immigration proceedings are pending and is therefore detained under § 1226(a).

## CLAIM FOR RELIEF
## UNLAWFUL ARREST

33. In 1996, Congress added Section 287(g) to the Immigration and Nationality Act. Section 287(g) authorizes ICE to delegate to state and local law enforcement officers the authority to perform specified immigration officer functions under ICE's direction and oversight. *Kachinski v. City of Taylor*, 2025 WL 2099979, at 1 (E.D. Mich. July 25, 2025).

34. This is accomplished by the federal government entering into a formal written agreement with state of local law enforcement agencies. *Kachinski v. City of Taylor*, 2025 WL 2099979, at 1 (E.D. Mich. July 25, 2025).

35. Currently, Sarpy County law enforcement does not have a 287(g) agreement with the federal government. See https://www.ice.gov/identify-and-arrest/287g (last visited June 9, 2026). The list of state and local agencies on the ICE website does not list Sarpy County Sheriff's office or the Nebraska Fugitive Operations Team as having a formal written agreement with the federal government.

36. Consequently, the initial arrest and subsequent detention of the Respondent was unlawful because the officers arresting the Respondent had no authority to effectuate such a arrest.

## PROCEDURAL DUE PROCESS

37. The mandatory detention of the Petitioner in Sarpy County Jail under § 1225(b) is inconsistent and violates well-established principles of procedural due process.

38. One case cited in the "Order of the Immigration Judge" for lack of jurisdiction was *Avila v. Bondi*, No. 25-3248 (8th Cir. March 25, 2026).

39. However, at no point does the majority opinion in *Avila* even use the terms "procedural due process" or "due process." See generally *Avila v. Bondi et al.*, No. 25-3248 (March 25, 2026). *Avila* is strictly a case over the interpretation and definition of the terms

"seeking admission" and "applicant for admission." *Avila*, No. 25-3248, 2026 WL 819258 at 4. The case examines the language, Congressional intent, grammatical structure, and the overall structure of the statute itself. *Avila*, No. 25-3248, 2026 WL 819258 at 4-6. Arguably, this case is persuasive authority if the Petitioner's argument was purely statutory and was not rooted in procedural due process considerations.

40. At the heart of the Fifth Amendment is the right to be free from deprivation of life, liberty, or property without due process of law.  U.S. Const. amend. V. Liberty is one of the most fundamental rights afforded and at the heart of the Due Process Clause is the freedom from imprisonment. *Zadvydas*, 533 U.S. at 690. The Due Process Clause extends to all "persons" regardless of status, including non-citizens. *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 784 (E.D. Mich. 2025). Indeed, the Fifth Amendment requires adequate procedural protections to ensure that the government's justification for physical confinement outweighs the constitutionally protected interest in avoiding restraint. *Zadvydas*, 533 U.S. at 690.

41. In order to determine whether civil detention violates a detainee's Fifth Amendment Due Process Rights, courts apply a three-part test. *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts weigh whether 1) the private interest that will be affected by the official action, 2) the risk of an erroneous deprivation of such interests through the procedures used, and 3) the government's interest, including the administrative burdens that the additional procedural requirement would entail. *Mathews*, 424 U.S. at 335.

42. When applying the *Mathews* test, the government must establish by clear and convincing evidence that the Petitioner is dangerous or a flight risk. *L.G.*, 744 F. Supp. 3d at 1181.

43. The Petitioner has a significant private interest in being free from physical detention. While being held on a immigration hold, this is effectively "indistinguishable from criminal incarceration." *Maldonado*, 795 F. Supp. 3d at 1148 (citations omitted). The Petitioner is experiencing all of the deprivations of incarceration, including loss of contact with friends and family, loss of incoming earning, lack of privacy, and lack of

freedom of movement. *Maldonado*, 795 F. Supp. 3d at 1148. These conditions exist despite the fact the Petitioner has no criminal convictions or pending criminal charges.

44. Under the second *Mathews* factor, whether the challenged procedure creates a risk of erroneous deprivation of the individuals' private rights and the degree to which alternate procedures could reduce these risks is assessed. *Maldonado*, 795 F. Supp. 3d at 1148. Detention without any individualized assessment creates a "high risk of erroneous deprivation" of a protected liberty interest. *Edahi v. Lewis*, No. 4:25-CV-129-RGJ, 2025 WL 3466682, at 14 (W.D. Ky. Nov. 27, 2025); see also *Yao v. Almodovar*, No. 2025 WL 3653433 at 11 (S.D.N.Y. Dec. 17, 2025) (ICE's discretion free detention violated the due process) (citations and quotations omitted).

45. Furthermore, as discussed *supra*, the statutory deficiencies and plethora of contrary case law with § 1225(b) being improperly used expound the risk of erroneous deprivation of the Petitioner's due process rights.

46. The third factor is the government's interest, including the fiscal and administrative burdens that the additional procedural requirement would entail. This also requires an assessment of "public interest." *L.G.*, 744 F. Supp. 3d at 1184. Since immigration courts routinely conduct bond hearings, there are "minimal fiscal and administrative burden(s)" involved. *Hong v. Mayorkas*, 2022 WL 1078627, at 5 (W.D. Wash Apr. 11, 2022) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Additionally, as a DACA recipient, the Petitioner's employment means he is actively and productively contributing to society. Accordingly, the fiscal and administrative burden of holding a bond hearing for the Petitioner is virtually nonexistent. If anything, the Petitioner's freedom (and resulting employment) results in a net positive for the local economy.

47. Accordingly, the fiscal and administrative burden of holding a bond hearing for the Petitioner is virtually nonexistent.

48. Last, if a noncitizen is neither a flight risk nor dangerous, there is no government or public interest in detention. *L.G.*, 744 F. Supp. 3d at 1185. The Petitioner's warrant is not for a crime, let alone violent crime. Rather, the warrant was issued because of a misunderstanding surrounding the Respondent's Notice to Appear never being filed.

49. Similarly, the Petitioner has dutifully been in communication with his attorney and has strong ties with the community through his employment and community service.

## PRAYER FOR RELIEF

Wherefore, Petitioner prays that this Court grant the following:

50. Assume jurisdiction over this matter.

51. Order the immediate release of the Respondent due to the unlawful arrest effectuated by Sarpy County Sheriffs and/or the Nebraska Fugitive Operations Team.

52. In the alternative, grant Petitioner a writ of habeas corpus directing the Respondents to provide the Petitioner with a bond hearing *within one week*.

53.  Instruct the Department of Homeland of Security that they have burden of proof to show by clear and convincing evidence that continued detention is necessary to ameliorate the risk of flight or danger.

54. The presiding immigration judge must consider ability to pay a bond and the availability of release with conditions as sufficient to protect any government interest in preventing flight risk or danger.

Respectfully submitted on June 9, 2026.

By: /s/ PAUL J. FORNEY
Paul J. Forney, #24503
Attorney for Respondent
4824 S 24TH ST.
OMAHA, NE 68107
(402) 614-9995

Uploaded on: 05/08/2026 at 01:10:12 PM (Central Daylight Time)  Base City: OMA

**U.S. Department of Homeland Security**                    Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| LOPEZ-SANCHEZ, KELVIN | 220 880 339<br>Event No: OMA2605000041 | 05/06/2026 |

CURRENT ADMINISTRATIVE CHARGES
--------------------------------
05/06/2026 - 212a6Ai - ALIEN PRESENT WITHOUT ADMISSION OR PAROLE - (PWAs)05/06/2026 -
212a7AiI - IMMIGRANT WITHOUT AN IMMIGRANT VISA

RECORDS CHECKED
----------------
CIS checked on 05/06/2026 with Positive result.CLAIM checked on 05/06/2026 with Negative
result.NCIC checked on 05/06/2026 with Positive result.TECS checked on 05/06/2026 with
Positive result.

ARRESTING AGENTS
-----------------
A.GILL 12021 GILLN5506 DARNELLJ 5951 BRYSONK 8802 MADILL

ARRESTED AT/NEAR
-----------------
1210 GOLDEN GATE DR, PAPILLION, NEBRASKA, UNITED STATES

RECORD OF DEPORTABLE/EXCLUDABLE ALIEN:
---------------------------------------

ARREST/LOCATION:
On May 6, 2026, members of the Omaha, NE Fugitive Operations Team were conducting
enforcement at the Sarpy County Courthouse in Papillion, NE. FOT officers encountered and
arrested Kelvin LOPEZ-SANCHEZ hereafter referred to as LOPEZ-SANCHEZ, a citizen and native
of Nicaragua,  whom was the subject of the targeted operation.
Omaha FOT Officers conducted a field interview with LOPEZ-SANCHEZ prior to the arrest, to
confirm his name, date of birth, and alienage. LOPEZ-SANCHEZ confirmed his name to be true
and accurate, and indicated that he is a citizen and native of Nicaragua, born on October
27, 2001. LOPEZ-SANCHEZ stated he had crossed over into the United States in 2021 illegally
without proper documentation, admission, or inspection. LOPEZ-SANCHEZ admitted to being
illegally present in the United States but stated he was given an appearance date to see an
Immigration Judge. Omaha FOT Officers advised LOPEZ-SANCHEZ his I-862 Notice To Appear was
never filed and his failure to report to the Immigration Office in Miami, Florida resulted
in a I-200 Warrant of Arrest being issued.
After confirming LOPEZ-SANCHEZ' identity and alienage, officers presented a signed I-200
Warrant of Arrest to LOPEZ-SANCHEZ and took him into custody without incident.

ENTRY DATA/IMMIGRATION HISTORY
December 8, 2021 - Lopez-Sanchez was encountered by United States Border Patrol Agents in
Eagle Pass, Texas where he admitted to being in the United States without admission,
inspection, or parole. US Border Patrol Agents processed Lopez-Sanchez with an I-862 Notice
To Appear.

December 10, 2021 - Lopez-Sanchez was served a I-220A Order of Release on Recognizance with
instructions to report at the Miami, Florida ICE ERO office on February 8, 2022.

February 8, 2022 - Lopez-Sanchez failed to report the Miami ICE ERO field office as
instructed.

CRIMINAL HISTORY:

Lopez-Sanchez was given a traffic citation in Sarpy County, NE on April 28, 2026.

| Signature | Title |
|---|---|
| A.GILL 12021 GILL | Deportation Officer |

2 of 3 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

Exh. 2 -

2

Uploaded on: 05/08/2026 at 01:10:12 PM (Central Daylight Time)  Base City: OMA

**U.S. Department of Homeland Security**                    Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| LOPEZ-SANCHEZ, KELVIN | 220 880 339<br>Event No: OMA2605000041 | 05/06/2026 |

No significant criminal history reported.

HEALTH:

LOPEZ-SANCHEZ claims to be in good general health. He takes no medications.

MILITARY:

LOPEZ-SANCHEZ made no claim to U.S. military service.

CONSULAR NOTIFICATION:

LOPEZ-SANCHEZ declined to speak with the consulate of Nicaragua.

GANG INFO:

LOPEZ-SANCHEZ denies any gang involvement, nor does he have any body markings that would suggest otherwise.

PENDING APPLICATIONS:

LOPEZ-SANCHEZ stated he has no pending applications. Queries in DHS databases show no record of LOPEZ-SANCHEZ applying for any applications or petitions.

FEAR:

LOPEZ-SANCHEZ stated he doesn't fear persecution or torture if he returns to Nicaragua.

MINOR CHILDREN/INCAPACITATED ADULTS:

Do you have any minor children or are you the primary caretaker of an incapacitated adult?
No.

Are you currently party to any child welfare or child custody proceedings?
No.

DISPOSITION:
On May 6, 2026, LOPEZ-SANCHEZ was served an I-862 Notice to Appear and an I-826 Disposition of Rights. LOPEZ-SANCHEZ will be held in custody at the McCook ICE Detention Facility in McCook, NE pending his immigration proceedings.

OTHER IDENTIFYING NUMBERS
---------------------------
ALIEN-220880339

| Signature | Title |
|---|---|
| A.GILL 12021 GILL | Deportation Officer |

3 of 3 Pages

EOIR - 4 of 4

Form I-831 Continuation Page (Rev. 08/01/07)

Exh. 2 -                                                                        3